list. And we will hear first from Mr. Tusek. Yes, sir. Did I pronounce that correctly? Yes, sir. All right. You may proceed when you're ready. Good morning, Your Honors. My name is Aaron Tusek, representing Appellant Barry Williams. I'd like to reserve four minutes of my time for rebuttal. May it please the court. The district court made two key errors below. First, it held that a Barry Williams claims challenging his overturned capital conviction for the murder of Jerome Dunn accrued before the termination of the criminal proceedings against him. This was error under Smith v. McDonough. This was error under what? Smith v. McDonough. I'm By holding that and honestly prematurely speculating that any claims related to the Billingsley murder would necessarily impugn the extant convictions for the attempted murder convictions of two other individuals, Carol Freeman and Anthony DeVos. With respect to Dunn, why isn't the vacature sufficient to remove any sort of heck issue so that at that point, the claim would begin to accrue? Yes, Your Honor. McDonough is very clear on this point. McDonough says that when there has been a vacature or an acquittal and there are still criminal proceedings ongoing, then there are very serious concerns about parallel litigation where you have a- But the violations that occurred were Nipue like false testimony and Brady and things like that, that cannot recur at the retrial. Well, Your Honor- So you've now, so the basis for the civil claim, which was the basis for the vacature, is not going to collide with the ongoing proceedings, which will have all the Brady stuff is cured and there's not going to be any Nipue violation. That false testimony that's been identified is not going to be used again. So it seems to have disentangled it at the moment of vacature and it's not clear why you have to wait for the dismissal. Well, respectfully, Your Honor, there hasn't been evidentiary rulings that certain pieces of evidence will be excluded or won't be excluded. We know what the habeas order says and we know that the habeas order does say that evidence, the Cox testimony related to the Messiah violation is certainly going to be excluded. But other evidentiary rulings about evidence that other witnesses may or may not- What were the items of evidence you think there was a remaining ambiguity that could have created a collision between the civil suit and the ongoing criminal proceedings undone? Yes, Your Honor. Well, looking at, we know that Cox's testimony was excluded, but there was also concerns about the testimony of Patricia Lewis. And these concerns were very significant because Ms. Lewis, initially at trial, failed to testify accurately and truthfully about the other witness in the car. And there was a Brady violation related to this. The complaint alleges that she failed to make that testimony because she was concerned about protecting this other witness. And on retrial, we just don't know what Patricia Lewis would have testified. So I have two questions for you. The first one you may not be able to answer. So first of all, why didn't you bring it? If it was barred by, if we determined that it was barred by Eck versus Humphrey, then you'd be in the clear to wait until the charges were dismissed. So there certainly was a protective suit that you could have filed. Secondly, what evidence is there that the district attorney was still considering? What conversations were going on between the defense and the DA that would lead you to believe that the DA was still actively considering bringing a prosecution? Yes, Your Honor. On the first point, we think that this case is very clearly controlled by McDonough. And in McDonough, it says that these sorts of claims accrue at the conclusion of a criminal proceeding. And so there, and McDonough lays out very clear concerns that a litigant in Mr. Williams' shoes may have about bringing a case while... Was, so Dunn was still in prison after the habeas was issued in 2016. Yes. But he wasn't under any sentence for the Dunn matter. Is that correct? That's correct. He was moved off of death row, but he was being held in the county jail awaiting potential retrial on the same charge for the Dunn conviction. And he just languished there. It is not in the record before this court why the prosecution was taking so long to decide whether or not it would retry Mr. Williams. But the fact is he was in county jail. He had this murder charge for Dunn hanging over his head like the sword of Damocles. He did not know what was going to happen. And in those circumstances, McDonough is very clear that a litigant in those circumstances should not have... Did you or a prior counsel have any conversation with the DA's office about, what are you going to do in this case? Just help me out. I've got family vacation coming up. Are there any of those conversations where the DA would say, yeah, it's still under consideration? Your Honor, I will admit I was not... And that goes on for five years with no communication whatsoever as the DA contacted you or your client about the possibility of a retrial? Your Honor, respectfully, I'm... That's a long time to sit on those rights. Understood, Your Honor. But respectfully, we are far outside of the pleadings, far outside of anything that's in the record at this point, particularly when the Supreme Court has had a very clear... If there were any such evidence of communications between the DA's office and your office or prior counsel or between Dunn, pro se, this would have been a good time to have brought that evidence out. So to say that it's not in the record suggests that there probably isn't such evidence. Very, very likely, Your Honor. However, I will take this moment to emphasize for the court that we are at the pleading stage here. There has not been any elucidation of evidence in this case. But there was no allegation in the complaint? No allegation in the complaint. However, plaintiff... Mr. Williams would submit that Rule 8 would not require him to include such an allegation in the complaint. And Judge Carter was the district judge who issued the habeas? I believe that's correct, yes. Yeah, so he's very, very familiar with the circumstances. So on that point, I would just emphasize that because McDonough so clearly controls this issue, says that a plaintiff in these circumstances should not have to choose whether or not to bring a civil rights claim against the very people who may be prosecuting him for a crime, in this case, a capital conviction, McDonough clearly controls. So just for the rule you're asking for, is it that until there's clear closure in favor of your client while there's a potential for prosecution, you think that this period doesn't run against him? Your Honor, I would push back slightly that this isn't a case where there's a potential for prosecution. There is active charges against him. The indictment is still in place. The question is what the state is going to do with those charges. So the criminal proceedings are actual, they are in place. And our rule that we would say is this is a simple application of McDonough. You look to dismissal, which happened in 2021, and then statutory tolling under California law because Mr. Williams. The rule you want is the fact of the charges being in place, regardless of what else may be happening with those charges, regardless of other communications or lack thereof. It's just the fact of the charges pending. I'm not trying to put words in your mouth. I'm more trying to understand what position you're taking on that. Yes, Your Honor. As I read McDonough, I think that is very clearly the rule that the Supreme Court has told us we have to follow in these circumstances. And as I understand the Ninth Circuit's, the way it has viewed McDonough, it follows very clearly in the same way. And in fact, What Ninth Circuit cases are you referring to there? Well, Your Honor, in preparing for this argument, I looked at, there are some, the Ninth Circuit hasn't addressed McDonough a whole lot, but in a couple unpublished cases, it has adopted very similar positions to what we're arguing for. Those would be Manan Singh v. United States, case number 21-16192, and Hawkins v. Wagner, number 21-17099. I'm happy to file something with the court with those citations. Are these in the briefs? They're not, Your Honor. Are there other Ninth Circuit cases you're referring to other than these two? Yes, there's also predating McDonough is Bradford v. Scherchlicht, 803 F. 3rd 382. That is in the briefs in which the Ninth Circuit adopted a rule saying that we're going to look to the date of acquittal in a somewhat analogous circumstances rather than the date that a previous conviction was vacated. Counsel, oftentimes when we get a grant of habeas by a district court, particularly if it's the only charge on which they're incarcerated, the district court will say you've got to retry them within a certain period of time, let's say 60 days. Was there any such condition in Judge Carter's order? Not that I'm aware of, Your Honor. So, Your Honors, based on this, we think, yes? I'm looking at Bradford and one of the comments, it says after the discussion that you referenced in this case, it says, we recognize, however, that the result may be different under other factual circumstances. For example, a similar claim could accrue upon vacature of a conviction if the conviction was set aside in a manner precluding the government from maintaining charges on evidence presented at the initial trial. Why doesn't that exception cover this case? Because it seems that it was all evidentiary related, as I said, and therefore the vacature, Bradford suggests that vacature may be the trigger in such a case and you tell me why it isn't such a case. Yes, Your Honor. Two reasons. First, Bradford predated McDonough and we think that McDonough- That dicta in Bradford about that case is inconsistent with McDonough. Yes, Your Honor. And what in McDonough specifically rejects that? Well, McDonough very clearly adopts a rule that we wait until the termination of criminal proceedings. It's a bright line rule. So we're not looking into what is happening in the criminal proceedings. If there are criminal proceedings pending, a 1983 plaintiff has to wait until the close of those proceedings to bring his case. And also, Your Honor, we would argue that it is not clear from this record that all of the evidentiary basis identified in the habeas order could not have been brought up again at the retrial. And further, Your Honors, we would argue that discovery in these sorts of cases where we're alleging fabrication of evidence, civil discovery very often produces additional evidence of misconduct that may not have been able to have been discovered at the criminal stage. And therefore, that's an additional reason on top of the others already articulated why this court should follow McDonough, should not put too much weight on the dicta in Bradford, and should hold that Mr. Williams' claims accrued in 2021 with the dismissal of his case and that further the application of two-year statutory tollings made his Dunn-related claims timely. With that, I'd like to reserve the remainder of my time. I'll give you more time for rebuttal, but we haven't talked about the other case yet. That's correct, Your Honor. Can you address that? Yes, yes. On Billingsley, in Billingsley, it's very important to make clear that there was the murder conviction of Billingsley himself and then separate attempted murder convictions of two other people, Freeman and DuBose. But as I understand it, this isn't like in Dunn where it's gone, the slate was wiped clean. The murder is replaced by a manslaughter. Do I have that correct? That's correct. So how is it not the case that the 1983 claim is inconsistent with the manslaughter conviction? Yes, Your Honor. In the Ninth Circuit, there is very clear precedent saying that when you have a circumstance where a previous conviction is vacated, even by a settlement agreement, that's Roberts, that that is sufficient to bring a challenge to that vacated conviction. It's replaced by a lesser conviction arising out of the same conduct. And it would seem that there's a tension between the claims in the 1983 case and the conviction that is still in place. Understood, Your Honor. It's a different type of heck bar, but why isn't that a heck bar? Well, in Taylor v. County of Pima and Jackson v. Barnes, in fact, the court held that a 1983 plaintiff who had a earlier conviction vacated and then was reconvicted on the same charges had a claim for that earlier conviction. And the reason is because that the later conviction is separate and clean compared to the first one. And so when you're challenging that first conviction... And which case is that that you're just describing? Taylor v. County of Pima, 913 F3rd 930, and Jackson v. Barnes, 749 F3rd 755. And further, Your Honor, we'd emphasize that what you're raising is a damages issue. Mr. Williams is not challenging any of the time that he was incarcerated pursuant to that manslaughter conviction, pursuant to the attempted murder convictions of separate people. What he is challenging is the decades that he spent incarcerated that is totally unsupported by any extant conviction. Do you have case law that suggests that the heck inquiry would turn on the damages that are being sought? This is what the court did in Taylor, what it did in Barnes, what the Second Circuit did in Poventand, where when you have this circumstance where you have an earlier conviction that is vacated and a later conviction that is separate and clean from that earlier conviction, you're allowed to bring a challenge to that earlier conviction. Now, you might have limited damages, but you're allowed to bring that challenge because that earlier conviction is no longer extant. And furthermore, to the extent there are questions about the factual overlap of these claims, that is not well developed in this record. And it would be appropriate to have, to remand and have discovery in this case, to get a full picture of the jury instructions, of the kind of evidence that was actually presented at trial. So is your claim that he served longer for the murder than he would have for a voluntary manslaughter plus the other two convictions? Yes, Your Honor. And so it's just, this is really sort of a proportionality question, a question which we would say, gee, you got a life sentence for the murder. And now that it's been downgraded to manslaughter, you should have only gotten 15 years and you served 20. So you can get compensation for five years. Is that the argument? Your Honor, I don't think it's quite a proportionality argument. No, I mean, but that looks like that's what comes out of Taylor. Well, but in Taylor, you're looking at time served in the first instance and time served in the second instance. And in Taylor, there was perfect overlap. This is a case where there is not perfect overlap. Well, in citing Jackson v. Barnes, it looks like you had a murder and a rape and the murder gets vacated, but not the rape. And the court is concerned about how long you've served. But he's still serving, this would be a manslaughter if we've been sentencing this correctly from the beginning, it would have been manslaughter plus the two attempted murder charges. That's correct. And then we're supposed to divine how long the court would have likely given in 1981 and decide that if it was a year or two under what he served until 2025, that he's entitled to compensation for that? Respectfully, no, Your Honor. All you have to look at is the sentences that were actually in the record here. We know that he received about nine years for the manslaughter and attempted murder convictions. And we know that he was serving, in fact, a much, much longer life sentence on the murder conviction. That murder conviction no longer exists. And that time beyond the 10 years is just unsupported time that he was in prison without any factual basis in a conviction. All right. Thank you, counsel. We've taken you quite a bit over, but I'm going to give you, because we did, I'm going to give you the four minutes you requested for rebuttal. Thank you, Your Honor. All right. And so we will hear first from Mr. Brown. Yes, Your Honor. May it please the court, Anthony Brown for the County of Los Angeles, Nick Trutanich and James Jacobs. And I am going to argue for 10 minutes, and Mr. Lee's going to argue on behalf of the city for five. And I'm happy to begin, Your Honors, wherever you want me to begin. But because the county defendants have a separate claim that the city doesn't, the prosecutorial immunity claim, I'd like to at least have some time to address that. So I can address that now if you want me to, or I can respond. It's your argument. Okay. Thank you, Your Honors. Let me do address the prosecutorial immunity issue then. The law is clear that when a prosecutor is involved in actions that are intimately associated with the prosecutorial functions, the prosecutor is absolutely immune, even if the prosecutor undertook those actions in bad faith or with malice. And the allegations in Mr. Williams' complaint all point to conduct that was undertaken that was associated with the prosecutorial functions. We made this argument below. It's preserved. Judge Carter did not reach it, but we're on de novo review so the court can reach it here. In responding, Mr. Williams essentially pointed to four different places in his complaint where he had alleged what he claims are conduct that does not fall under the prosecutorial absolute immunity. And if I can, I'd like to walk through all four of those because it's pretty clear from the allegations in the complaint that each one of the things that Mr. Williams points to, which he calls and characterizes as fabrication of evidence, is in fact the presentation of evidence at trial. So the four sites begin with site to page 376 and 377 of the record. And that's about paragraph 90 of the complaint. And the allegation there is that Mr. Jacobs encouraged Cox to obtain inculpatory statements from the plaintiff. And this was after the second preliminary hearing. And then Jacobs made a deal with Cox to testify against the plaintiff. What that states is a Nippoui violation and a Messiah violation. When Mr. Cox allegedly was working as an agent of the prosecution to obtain statements from Mr. Williams in violation of the Sixth Amendment rights, that was for the purpose of presenting those statements at trial, which is what perfects the Messiah violation. It also, I think, encompasses a Nippoui violation, which is the presentation of allegedly false evidence at the trial. Those are clearly within prosecutorial functions. The Ninth Circuit's decision in Broome v. Bogan points to the fact that that kind of conduct is absolutely immune, and the prosecutors cannot be held liable for that. The second citation that he provides is to pages 380 and 381. Mr. Williams claims that these allegations show that Mr. Trutanich obtained false evidence from John Gardner. The allegations are actually paragraphs 111 through 117. And what the allegations say is that Mr. Gardner testified that Mr. Williams told him he shot Dunn, Mr. Trutanich offered him a plea deal in exchange for the testimony, and that Mr. Gardner later recanted. Those state, if they state anything at all, a Nippoui violation and potentially a Brady violation. We've cited to a case called Demery v. Kupperman in our brief that says that Brady is encompassed, or Brady inducing a witness to testify falsely, which is theoretically what this allegation says, is encompassed by Brady, and therefore falls within the absolute immunity that prosecutors have for their functions. Mr. Williams also cites to page 383. He characterizes that claim as stating that Mr. Trutanich obtained false evidence from Steve Wallace. That refers to paragraphs 124 and 125 of the complaint. In fact, what he alleges is that the DA knew Mr. Wallace lied when he testified that he didn't receive a benefit, and that they didn't do anything to correct the record. That's clearly a Nippoui violation. That clearly falls within the absolute immunity that prosecutors are entitled to, because that happened at trial. The final thing that Mr. Williams points to is page 406. I believe what he's referring to are paragraphs 212 and 214 of the record. The language that Mr. Williams used makes it very clear that these are Nippoui and Brady violations that he's alleging. He says fabrication of evidence occurred through the improper and unlawful use of testimony of various witnesses at the trial, and that there was a fabrication of evidence by destroying and suppressing exculpatory evidence related to Arlene McKay, who was the driver of the car. So all of those allegations that Mr. Williams has pointed to in his complaint all point to Nippoui, Brady, or Messiah violations. Those are all covered by absolute immunity for the prosecutors in this case. He didn't point to any other allegations in the complaint, and so we think that any argument based on additional allegations are waived. That's the prosecutorial argument, and that gets Mr. Trucanich and Mr. Jacobs out of the case because those are the prosecutors. And to the extent that Mr. Williams is also alleging a Brady, or I'm sorry, a Monell violation based upon whatever policies might've been in place that governed the conduct of the prosecutors, because they have absolute immunity, then the county should be dismissed from the case for that. If I can, I'd like to address, then turn to the McDonough argument, and just point out a couple things about the McDonough case. I think that McDonough is completely consistent with Heck, and that in this case, it's easy to get confused about whether the damages are significant or how to treat the fact that Mr. Williams pleaded guilty later in the case, in the Billingsley case, to the manslaughter conviction. And I would just say the lodestar that I think the court needs to follow is what Heck says. Heck says, if the plaintiff moved forward and he was successful on his civil complaint, and that that would necessarily imply the invalidity of an extant conviction, that complaint needs to be dismissed. And that's exactly what happens in this case. McDonough is not inconsistent with that in terms of the accrual issue. What McDonough says is that, if you suspect that there's fabricated evidence in your case, you can't file a civil lawsuit until there's a termination of the case. McDonough is perfectly consistent with Wallace v. Cato, where the court found that while there was a potential for a charge to be brought, a person could still bring his action. And so McDonough does not sort of draw the hard and fast rule that Mr. Williams is suggesting is here. In fact, I think that decisions from this circuit describe the conditions that would apply for accrual. So do you have any cases in which the possibility, the theoretical possibility of charges being brought was still available and the Heck was deemed timely? Well, we have three cases that sort of describe those circumstances. And the way the county argued the cases is they're Bradford, Jacobs, and then Roberts. And in those cases, this court seems to be describing the following scenario. If a conviction is vacated in a way that allows the prosecution to go forward on all the evidence that existed in the prior conviction, then the person is barred from bringing an action, a Section 1983 action. But if a conviction has been overturned in a way that prevents the prosecution from using the evidence that tainted the prior conviction, then what you really have are two different proceedings. You have an earlier proceeding that has been terminated under Heck, and you can bring a civil suit on that case. You have a separate proceeding that is now clean, that is now, we don't really know what's going to happen in that case. We don't know what evidence is going to be used in that case. What we do know is that based on the way that the case, the earlier case was vacated- So are you suggesting that a prosecution could go forward with the untainted evidence and a Heck civil suit could be proceeding at the same time for the use of the tainted evidence in the first proceeding? No, I think I'm suggesting the opposite, if I understand you. What I'm suggesting is that, so in the case, in the Bradford case- I'm trying to follow your answer there, but- Yeah, so I think if we get into the facts, it'll be a little bit easier. In the Bradford case, what happened was, he was convicted of burglary and rape. This is a Peeping Tom case. And after he served his sentence- Just maybe to put it more concretely in terms of what happened in this case. So once Judge Carter granted habeas relief and vacated the conviction and granted the habeas relief, at that point, Mr. Williams had a possibility of being tried again. He didn't know what would happen. But your position would be that once that habeas relief was granted because of the nature of the ruling, which held that there was tainted evidence, Mr. Williams could have at that point brought the civil case about that prior vacated conviction, even though he might still be subject to another trial. That's exactly right. Okay, so that was Judge Bybee's question, I think, which was, these could happen simultaneously. The answer would be the opposite of the one you gave. Then I'm terribly sorry that I misunderstood your question. That's exactly what I'm saying. At the point when Judge Carter had overturned the Dunn conviction with his habeas ruling, which was about 50 pages long and very detailed about what evidence was and what evidence was in violation of the Constitution, Mr. Williams knew exactly what evidence could be used in the second prosecution. And he knew that that wasn't going to be available. What's your response to opposing counsel's argument that this argument, which seems to be based on that Bradford dicta, is overruled by McDonough's adoption of a Brightline rule? What's your response? I don't think that's the case. That, you know, under Miller v. Gammey, that would, they would have had to argue that the cases are entirely inconsistent with each other and they're not. Both of them follow Heck. And both of them, I think, are consistent with Heck. And so for that reason, there's no reason, there's no reason to suggest that McDonough in some sense, via Miller v. Gammey, had overturned those convictions, or those two decisions. I see I'm out of time and I want to make sure that my co-counsel here. Thank you, Your Honors. All right, we will hear now from Mr. Lee. Good morning, Your Honors. Stephen Lee on behalf of Appellee's City of Los Angeles and Los Angeles Police Department. May it please the court. First, I'd like to address Judge Collins's question that was most recently posed to co-counsel where it's whether McDonough is in conflict with Bradford and it is not. McDonough establishes that acquittal can constitute a favorable termination such that a Heck bar does not exist. And it goes on to say that in this case, in McDonough, that the presentation of the tainted evidence did not begin the accrual of the statute of limitations. And that's entirely consistent with Bradford, which specified that McDonough, there was a mistrial and then a retrial, but there was never a judicial determination in the interim that, oh, this evidence is tainted and is out. Right. And so Bradford specifies that favorable termination can also include the vacator of a conviction if the prosecution is precluded from bringing the same charge upon the same evidence. Your answer would be the same to the question that Judge Bybee posed that it's your position that while he was being re-prosecuted or potentially it re-prosecuted in the Dunn case that he was the clock was running and he needed to bring the civil suit for the Napoleon Brady violations in the prior trial. Yes, I believe so, because that's what Bradford says. And that suit would not be precluded if the DA decided to refile the charges using untainted evidence. Correct, because the violation of using tainted evidence or the violation of constitutional rights from that previous tainted proceeding would I still think be entirely consistent with Heck where you could have that violation in that prior proceeding yet still have a valid charge based upon new consistent evidence. So the prosecution could have done something wrong with that first tainted proceeding for which there is redress, but Williams could still thereafter be charged for murder based upon different new evidence. So you get money, but you could still go to jail. In theory, yes. I'm trying to imagine what your clients would say if he'd actually done this and you were trying to re-prosecute him at the same time. And I imagine you would come in and say this is a huge distraction to have a civil lawsuit going on about the same incident when we're at the same time trying to charge him criminally. Your Honor, I can only follow what the Ninth Circuit has said. And what the Ninth Circuit has said in Bradford is that the vacator of a criminal conviction upon these circumstances constitutes favorable termination. And I'd also like to specify that Williams was concerned about the habeas order's elimination of the Cox testimony that was tainted, but he also highlights the Lewis testimony was problematic as well. And in fact, the habeas order excluded that too. So the vacator here was entirely sufficient because it could not be tried on the same charge using either the Cox or Lewis testimony. Judge Brest, you noted that Williams is actually asking for a change of the rules. And the rule change he wants here is that if a charge could be brought in the future, then it's heck barred. And I think that rewrites Bradford. It overturns Bradford because that's not what Bradford says. If you're able to, in this instance, vacate that charge where you can't bring that same charge upon the same evidence that's Bradford says, then that still constitutes favorable termination to remove it from the heck bar. I'd also like to briefly discuss the Billingsley claim and the essential conflict between Williams's position. On the one hand, he wants to say heck bars his Dunn claims because the Dunn claim was so inextricably intertwined with the Billingsley claim that he could not have proceeded on the Billingsley claim without the dismissal of the Dunn claim. And then the next breath, he says, well, the attempted murder convictions related to Billingsley aren't a heck bar to his claims on Billingsley, despite the fact that they arise out of the same transaction and occurrence use largely the same evidence, largely the same witnesses occurred at the same time and in the same place. To me, the position Williams adopts is deeply incompatible in considering the impact effect. On the one hand, narrowing it for his Billingsley-related claims such that even attempted murders in the same criminal incident aren't related. And on the other hand, expanding it such that an unrelated murder in Dunn is somehow inextricably intertwined with the Billingsley events. All right. Thank you, counsel. Thank you, your honors. All right, we'll hear rebuttal. Thank you, your honors, and good morning again. I want to focus back again on this issue in McDonough. McDonough develops a categorical rule that says that claims accrue when there's a pending criminal proceeding at the termination of that proceeding. The Supreme Court was very clear on that in McDonough. It is a development of Heck because Heck only looked at what happens when there's... So in 2021 in Dunn, the case is dismissed without retrial. There's no statute of limitations on this, right? Because it's a murder trial. Is that correct? Yes. Which means that it still could be pending. Right. So if the DA had never taken the step of dismissing the charges, you wouldn't be able to bring Heck forever. Is that your position? I think it's important to note that the charges were dismissed. Counsel, I'm asking you a hypothetical. Yes. It is a hypothetical, but that's why I'm asking it. Fair enough. If the DA had not dismissed those charges, then you wouldn't be here today and you wouldn't have filed Heck forever. Your honor, I think there's a separate constitutional problem if someone is sitting in jail, awaiting retrial on charges that are still pending indefinitely. That's a Billingsley problem. This is a Dunn problem. But the rule that you're advocating for would encourage DAs not to say anything further in order to prevent a Heck rule. That doesn't seem like a very good rule, does it? Your honor, I think the Supreme Court has been very clear that a cruel happens with termination of criminal proceedings. So I don't think that there's wiggle room on that. But what, I guess, what criminal proceedings, right? I mean, there was a prior conviction that was vacated. Yes. So I think the argument would be those proceedings have concluded and there may be some future proceedings that happen, but that's a future matter. Your honor, he remained incarcerated, awaiting retrial on the same charge in the same charging document subject to potentially much of the same evidence. This is very clearly it was not an extant conviction, right? Heck is talking about an extant conviction. I think even Wallace V. Cato, if I recall, has language in it about, you know, Heck is not about impugning the invalidity of a future possible conviction. That's correct. Heck is not. What McDonough is, is that squarely that question because McDonough is concerned about exactly this circumstance as you were questioning my friends on the opposing side. What happens when you have a litigant in this position where there are charges pending, they don't know what the prosecution is going to do and they have a clock ticking on potential Heck claims and the Supreme Court was crystal clear in McDonough. You wait until the criminal proceedings are terminated and it's a bright line rule. It's categorical and I think the court has very little wiggle room with that bright line rule. And moreover, I would emphasize. Are you taking the position that some of the statements in Bradford are clearly reconcilable with McDonough? I think the dicta in Bradford that we discussed earlier is not fully compatible with McDonough. And the reason for that is the court in Bradford says we don't have guidance from the Supreme Court. We have to conduct standard accrual analysis in the first instance. And this is how we think that looks following our standard accrual analysis. This might be a circumstance where there's accrual. Then in McDonough, the Supreme Court comes in and says we are going to solve this question. We are going to look at this issue that's been a problem for lower courts with how to apply similar concerns about Heck, about parallel litigation and trying to fight in federal court and also state court at the same time and all these difficult circumstances that a plaintiff finds themselves in. And the Supreme Court says it's at the termination of proceedings, which we think controls in this case. Thank you, counsel. Thank you. Your case just argued will be submitted.
judges: BYBEE, COLLINS, BRESS